Citation Nr: 1719252 
Decision Date: 05/04/17 Archive Date: 06/06/17

DOCKET NO. 09-19 351 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Buffalo, New York


THE ISSUES

1. Entitlement to an increased disability rating for a lumbosacral strain with lumbar spine degenerative spondylosis (lumbosacral spine disability) in excess of 20 percent from April 19, 2007.

2. Entitlement to a higher initial disability rating for left lower extremity L4-S1 sensory radiculopathy with foot involvement (left lower extremity radiculopathy) in excess of 10 percent for the period from April 19, 2007 to February 7, 2016.

3. Entitlement to a higher initial disability rating for left lower extremity radiculopathy in excess of 10 percent from February 7, 2016.


WITNESS AT HEARING ON APPEAL

The Veteran (Appellant)


ATTORNEY FOR THE BOARD

E. Choi, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from December 1979 to March 1980.

This matter previously came before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the RO in Lincoln, Nebraska, which in pertinent part, recharacterized the Veteran's service-connected lumbosacral spine disability as a lumbosacral strain with lumbar spine degenerative spondylosis to include lower extremity radiculopathy, and increased the disability rating from 10 percent to 20 percent, effective April 19, 2007. The December 2008 rating decision also determined that new and material evidence had not been received to reopen service connection for posttraumatic stress disorder (PTSD). Jurisdiction over this case is currently with the RO in Buffalo, New York.

In a May 2009 Statement of the Case (SOC), the Decision Review Officer in Lincoln, Nebraska, recharacterized the Veteran's service-connected lumbosacral spine disability as a lumbosacral strain with lumbar spine degenerative spondylosis, and continued the 20 percent disability rating. The May 2009 SOC also assigned a separate 10 percent disability rating for L4-S1 sensory radiculopathy in the left lower extremity with foot involvement, effective April 19, 2007.

In March 2011, the Board remanded the matters on appeal to the RO to allow the Veteran the opportunity to appear for a Board hearing. In July 2011, the Veteran testified at a Board videoconference hearing in Reno, Nevada, before the undersigned Veterans Law Judge (VLJ) sitting in Washington, D.C. A transcript of the hearing has been associated with the record.

In September 2011, the Board remanded the issues of entitlement to an increased rating for the lumbosacral spine disability and a higher initial disability rating for left lower extremity radiculopathy to the RO for further development. The September 2011 Board decision also determined that no new and material evidence had been received to reopen service connection for PTSD, which the Veteran appealed to the United States Court of Appeals for Veterans Claims (Court). In May 2012, the Court granted the parties' Joint Motion for Partial Remand, vacated the portion of the September 2011 Board decision that determined new and material evidence had not been received to reopen service connection for PTSD, and remanded the matters to the Board for further adjudication. In July 2012, the Board determined that new and material evidence had been received to reopen service connection for PTSD and denied the claim on the merits, which Board decision the Veteran appealed to the Court. In March 2013, the Court granted the parties' Joint Motion for Remand, vacated the portion of the July 2012 Board decision that denied service connection for PTSD on the merits, and remanded the matter to the Board for further adjudication.

In a December 2013 decision, the Board granted service connection for PTSD and remanded the issues of entitlement to an increased rating for the lumbosacral spine disability and a higher initial disability rating for the left lower extremity radiculopathy to the RO for further development. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Failure of the Board to ensure compliance with remand instructions constitutes error and warrants the vacating of a subsequent Board decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998). As discussed below, the Board finds that the December 2013 Board remand directives were complied with, and the matter has been properly returned to the Board for appellate consideration. Nonetheless, for the reasons discussed below, the Board must once again remand the issues of an increased disability rating for the lumbosacral spine disability and a higher initial disability rating for left lower extremity radiculopathy from February 7, 2016, for additional development. See Locklear v. Shinseki, 24 Vet. App. 311 (2011) (bifurcation of a claim generally is within VA's discretion); Tyrues v. Shinseki, 23 Vet. App. 166, 178-79 (2009), aff'd, 631 F.3d 1380 (Fed. Cir. 2011) (holding that it is permissible to bifurcate a claim and to adjudicate the distinct theories of entitlement separately).

The record reflects the Veteran's left lower extremity radiculopathy is a neurological manifestation of the lumbosacral spine disability on appeal. While the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula) specifies that neurologic manifestations of a lumbar spine disability should be considered when rating a lumbar spine disability, the resulting neurological disorder, if any, is considered a separate disability with separate symptomatology that is separately rated under the appropriate neurologic diagnostic code (DC). 38 C.F.R. § 4.71a, General Rating Formula Note (1) (2016); Mittleider v. West, 11 Vet. App. 181, 182 (1998) (stating that the Board is precluded from differentiating between symptomatology attributed to a non-service-connected disability and a service-connected disability in the absence of medical evidence that does so, although the Board may not ignore such distinctions where they appear in the medical record). Accordingly, the issue of the initial disability rating for the left lower extremity radiculopathy for the period from April 19, 2007 to February 7, 2016, is not inextricably intertwined with the lumbosacral spine rating issue being remanded below, and need not be deferred pending development and adjudication of the lumbosacral spine rating issue upon such remand. See Roper v. Nicholson, 20 Vet. App. 173 (2006); Ellington v. Peake, 541 F.3d 1364 (Fed. Cir. 2008) (holding that, when a separate rating has been assigned for a secondary disability and a notice of disagreement has not been filed, 38 C.F.R. § 3.310(a) does not require VA to adjudicate the elements of effective date or disability rating of a secondary disability in the same decision as the primary disability).

The instant matter is a Veterans Benefits Management System (VBMS) appeal. The Board has reviewed both the VBMS and the "Virtual VA" files so as to ensure a complete review of the evidence in this case. The issues of an increased disability rating for the lumbosacral spine disability and a higher initial disability rating for left lower extremity radiculopathy from February 7, 2016 are addressed in the REMAND portion of the decision below and are REMANDED to the RO.


FINDINGS OF FACT

1. For the initial rating period on appeal from April 19, 2007 to February 7, 2016, the Veteran's left lower extremity radiculopathy has been manifested by numbness, paresthesias, intermittent pain, normal muscle strength, decreased deep tendon reflexes, decreased sensation to light touch, trophic changes, and no muscle atrophy, more nearly approximating mild to moderate incomplete paralysis of the posterior tibial nerve.

2. For the initial rating period on appeal from April 19, 2007 to February 7, 2016, the Veteran's left lower extremity radiculopathy did not more nearly approximate severe incomplete paralysis of the posterior tibial nerve.


CONCLUSION OF LAW

For the initial rating period on appeal from April 19, 2007 to February 7, 2016, the criteria for an initial disability rating in excess of 10 percent for left lower extremity radiculopathy have not been met or more nearly approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326, 4.3, 4.7, 4.10, 4.21, 4.124a, Diagnostic Code 8599-8525 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and to Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duties to notify and assist claimants in substantiating their claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b) (2016). Such notice should also address VA's practices in assigning disability ratings and effective dates for those ratings. See Dingess v. Nicholson, 19 Vet. App. 473 (2006). Notice should be provided to a claimant before the Agency of Original Jurisdiction's (AOJ) initial unfavorable decision on a claim. 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103, 110 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

As the instant decision remands the issue of an increased rating for the lumbosacral spine disability, no further discussion of VA's duties to notify and assist is necessary as to that issue at this time.

With respect to the issue of entitlement to a higher initial rating assigned for left lower extremity radiculopathy, the Veteran's disagreement with the initial rating follows the grant of service connection, so no additional notice is required. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the Court have held that, once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims). Thus, the Board concludes that VA has satisfied its duty to notify the Veteran.
 
VA has also satisfied its duty to assist the Veteran in the development of the claim. First, VA satisfied its duty to seek and assist in the procurement of relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. Specifically, the information and evidence that have been associated with the claims file include service treatment records, service personnel records, VA treatment records, VA examination reports, Social Security Administration (SSA) records, lay statements, and the transcript from the July 2011 Board hearing.

Next, VA satisfied its duty to obtain a medical opinion when required. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). In October 2014, the Veteran was provided with a VA examination for peripheral nerve conditions, the report from which has been associated with the file. When VA undertakes to provide an examination or obtain an opinion, it must ensure that the examination or opinion is adequate. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the October 2014 VA examination report is thorough and adequate and provide a sound basis upon which to base a decision with regard to the issue of a higher initial disability rating for left lower extremity radiculopathy. The VA examiner personally interviewed and examined the Veteran, including eliciting a history, and provided an opinion with supporting rationale.

In light of the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal, and no further development is required to comply with the duty to assist in developing the facts pertinent to the instant matter before the Board on appeal. 

Initial Disability Rating for Left Lower Extremity Radiculopathy for the Period from April 19, 2007 to February 7, 2016

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 38 U.S.C.A. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2 (2016). Where there is a question as to which of two disability ratings shall be applied, the higher rating is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. When, after careful consideration of the evidence, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

Where, as in this case, the question for consideration is the propriety of the initial ratings assigned, evaluation of the all evidence and consideration of the appropriateness of staged ratings is required whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). Here, the Board will evaluate the issue for a higher rating of the original award. In such cases, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. Id. The Board has considered whether staged rating is warranted with respect to the issue of entitlement to a higher initial rating for left lower extremity radiculopathy, and notes that the record indicates the severity of the left lower extremity radiculopathy may have changed during the course of the appeal so as to warrant staged rating, as explained below.

Pyramiding, that is the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disability. 38 C.F.R. § 4.14 (2016). However, it is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; the critical element in permitting the assignment of several evaluations under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. See Barr, 21 Vet. App. 303.

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by, or on behalf of, the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

For the entire initial rating period from April 19, 2007, the left lower extremity radiculopathy has been rated at 10 percent under the criteria found at 38 C.F.R. § 4.124a, DC 8599-8525 for mild or moderate incomplete paralysis of the posterior tibial nerve. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. The additional code is shown after a hyphen. 38 C.F.R. § 4.27. A designation of a diagnostic code that ends in "99" reflects that the disability is a condition not specifically listed in the Rating Schedule.

Diagnostic Code 8525 provides the rating criteria for paralysis of the posterior tibial nerve. A 30 percent rating is applicable where there is complete paralysis of all muscles of the sole of the foot, frequently with painful paralysis of a causalgic nature; toes cannot be flexed; adduction is weakened; and plantar flexion is impaired. Severe incomplete paralysis warrants a 20 percent disability rating. Moderate or mild incomplete paralysis warrants a 10 percent evaluation. 38 C.F.R. § 4.124a, Diagnostic Code 8525.

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild or at most, the moderate degree. See 38 C.F.R. § 4.124a.

Words such as "severe," "moderate," and "mild" are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be equitable and just. 38 C.F.R. § 4.6. Although the use of similar terminology by medical professionals should be considered, it is not dispositive of an issue. Instead, all evidence must be evaluated in arriving at a decision regarding a request for a higher disability rating. 38 U.S.C.A. § 7104; 38 C.F.R. §§ 4.2, 4.6.

Neuritis, cranial or peripheral, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum rating equal to severe, incomplete, paralysis. 38 C.F.R. §§ 4.123, 4.124a, DC 8625. Similarly, neuralgia, cranial or peripheral, characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scale, with a maximum rating equal to moderate incomplete paralysis. 
38 C.F.R. §§ 4.124, 4.124a, DC 8725.

After review of the lay and medical evidence of record, the Board finds the weight of the evidence is against finding that the Veteran's left lower extremity radiculopathy more nearly approximates severe incomplete paralysis of the posterior tibial nerve, so as to warrant a higher 20 percent rating during the initial rating period from April 19, 2007 to February 7, 2016.

In connection with the April 19, 2007 claim for an increased disability rating for the lumbosacral spine disability, the Veteran was provided a VA examination of the spine in November 2008. During the November 2008 VA examination, the Veteran reported radiating pain in the legs in conjunction with pain in the lumbar spine. The Veteran denied symptoms of numbness, paresthesias, leg or foot weakness, or falls. The Veteran reported being able to walk a quarter of a mile and denied using any assistive devices to ambulate. Upon physical examination, the Veteran was found to have full motor strength in the lower extremities, but impaired sensation in the left lower extremity that the VA examiner noted was consistent with L4-S1 sensory loss in the left foot. A reflex examination found the left knee and ankle were hypoactive, but left plantar flexion was normal. Upon conclusion of the November 2008 examination, the VA examiner diagnosed chronic lumbosacral strain with sensory radiculopathy and ordered further testing of the sensory loss found during the examination.

During the July 2011 Board hearing, the Veteran testified to experiencing symptoms of tingling and numbness in the foot, and endorsed having "drop foot," where one foot drags while walking. The Veteran testified to occasionally using a stick to maintain balance while walking, and that he was unable to walk very far.

In November 2011, the Veteran was provided with VA examinations of the thoracolumbar spine and peripheral nerve conditions. During the November 2011 VA examinations, the Veteran reported occasional tingling and burning sensations in the feet and toes, which symptoms began in the prior year; however, the November 2011 VA examination reports reflect the Veteran did not allow the VA examiner to perform certain physical tests, resulting in inconsistent findings. The November 2011 VA examination report for peripheral nerve conditions reflects the VA examiner was unable to render a diagnosis because of the inconsistent test results. Nonetheless, the VA examiner recorded the Veteran's reported symptoms of mild intermittent pain, paresthesias and/or dysesthesias, and numbness in the left lower extremity. Of the physical examinations that were performed, muscle strength testing revealed normal strength for left knee extension, ankle plantar flexion, and ankle dorsiflexion, with no evidence of muscle atrophy. A tendon reflex examination revealed the left knee and ankle were hypoactive. A sensory examination revealed decreased sensation in the left foot and toes, but normal sensation in the left upper anterior thigh, thigh and knee, and lower leg and ankle. Further, the November 2011 VA examination report reflects that no paralysis was found in either the left sciatic nerve, external popliteal nerve, musculocutaneous nerve, anterior tibial nerve, internal popliteal nerve, posterior tibial nerve, anterior cural nerve, internal saphenous nerve, obturator nerve, external cutaneous nerve of the thigh, or in the ilio-inguinal nerve. 

Pursuant to the Board's December 2013 remand directives, the Veteran was provided with another VA examination of the peripheral nerve conditions in October 2014, the report for which reflects a diagnosis of polyneuropathy in the peripheral lower extremities. During the October 2014 VA examination, the Veteran reported symptoms of moderate intermittent pain, paresthesias and/or dysesthesias, and numbness in the left lower extremity. Muscle strength testing revealed normal strength in left knee extension, ankle plantar flexion, ankle dorsiflexion, and was negative for findings of muscle atrophy. A reflex examination found the left knee and ankle were hypoactive and a sensory examination found decreased sensation in the left lower leg/ankle and in the left foot/toes. Further, the October 2014 VA examination report indicated positive findings of trophic changes that were described as the absence of hair, with smooth and somewhat shiny skin in the feet and toes. The VA examiner noted moderate incomplete paralysis of the left external popliteal nerve, musculocutaneous nerve, anterior tibial nerve, internal popliteal nerve, posterior tibial nerve, and of the internal saphenous nerve. Further, the VA examiner indicated a negative response as to whether the Veteran used any assistive devices to aid mobility.

The Board notes that the October 2014 VA examination report reflects a change in diagnosis from left lower extremity radiculopathy to polyneuropathy in the peripheral lower extremities; however, the Board finds that this change in diagnosis is of no consequence in determining the severity of the Veteran's service-connected left lower extremity radiculopathy as the October 2014 VA examination nonetheless tested and assessed the severity of the symptoms in the left lower extremity, for rating pursuant to the same criteria under Diagnostic Code 8525. See 38 C.F.R. § 4.27 (2016) ("diagnostic code numbers...are arbitrary numbers for the purpose of showing the basis of the evaluation assigned and for statistical analysis"); see also Read v. Shinseki, 651 F. 3d 1296, 1302 (Fed. Cir. 2011) (holding that service connection for a disability is not severed when the Diagnostic Code associated with it is changed to determine more accurately the benefit to which a veteran may be entitled).

Subsequently, a March 2015 VA treatment record from the Syracuse VA Medical Center (VAMC) shows the Veteran reported for emergency treatment for a sore throat that had persisted for two days. During that emergency treatment, a physical examination of the Veteran's extremities found full range of motion in all four extremities, and no evidence of edema.

Based on the foregoing, the Board finds that weight of the lay and medical evidence of record demonstrates that the Veteran's left lower extremity radiculopathy has not more nearly approximated the criteria for a 20 percent rating under DC 8525 for symptoms of severe incomplete paralysis of the posterior tibial nerve for any part of the initial rating period from April 19, 2007 to February 7, 2016. As detailed above, during the November 2008 VA examination, the Veteran was found to have full motor strength in the lower extremities, and was diagnosed with sensory radiculopathy in the left lower extremity, indicating that any nerve involvement was wholly sensory. When the nerve involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a. 

While the Veteran testified during the July 2011 Board hearing to the left foot dragging when walking, the subsequent November 2011 VA examination found no paralysis in any of the nerve groups in the left lower extremity. Additionally, the October 2014 VA examination report reflects findings of only moderate incomplete paralysis of the left external popliteal nerve, musculocutaneous nerve, anterior tibial nerve, internal popliteal nerve, posterior tibial nerve, and of the internal saphenous nerve. Finally, the March 2015 VA treatment record reflects the Veteran had full range of motion in all four extremities. 

For these reasons, the Board finds that, for the initial rating period from April 19, 2007 to February 7, 2016, the weight of the lay and medical evidence demonstrates that the left lower extremity radiculopathy has not more nearly approximated severe incomplete paralysis of the posterior tibial nerve (the criteria for a 20 percent rating); therefore, the Board finds that a disability rating in excess of 10 percent is not warranted under Diagnostic Code 8525 for the left lower extremity radiculopathy. 38 C.F.R. §§ 4.3, 4.7.

Extraschedular Consideration

The Board has also evaluated whether the initial rating for the Veteran's left lower extremity radiculopathy for the period from April 19, 2007 to February 7, 2016, should be referred for consideration of an extraschedular adjudication under 38 C.F.R. § 3.321(b)(1) (2016). Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular ratings are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extraschedular rating commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1).
 
The Court has clarified that there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. Initially, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. Second, if the schedular rating does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. Thun v. Peake, 22 Vet. App. 111 (2008). 

With respect to the first prong of Thun, the Board finds the schedular criteria are adequate to rate the Veteran's left lower extremity radiculopathy, and no referral for extraschedular consideration is required. The left lower extremity radiculopathy has primarily manifested in symptoms of numbness, impaired sensation, moderate intermittent pain, and moderate incomplete paralysis of the posterior tibial nerve. The schedular rating criteria specifically include numbness, decreased sensation, painful paralysis, and incomplete paralysis as part of the General Formula for Diseases and Injuries of the Peripheral Nerves. The schedular rating criteria, including Diagnostic Codes 8525, 8625, 8725, provide for disability ratings based on the overall severity of complete or incomplete paralysis, neuritis, or neuralgia in the posterior tibial nerve, respectively, and specifically contemplate such symptomatology and functional impairment. In this case, comparing the Veteran's disability level and symptomatology of the nerve disability to the rating schedule, the degree of disability throughout the entire period under consideration is contemplated by the rating schedule and the assigned rating is, therefore, adequate. 38 C.F.R. § 4.97. Absent any exceptional factors associated with the left lower extremity radiculopathy, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extraschedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate.

Finally, entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is potentially an element of all rating issues. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, the Board notes that a March 2014 rating decision has already granted a TDIU from April 19, 2007. As a TDIU has already been granted for the entire rating period on appeal, there is no question of law or fact for the Board to decide.


ORDER

A higher initial disability rating in excess of 10 percent for the left lower extremity radiculopathy for the period from April 19, 2007 to February 7, 2016 is denied.


REMAND

Increased Rating for Lumbosacral Spine Disability

The issue of an increased rating for the lumbosacral spine disability is remanded for further VA examination. Recently, in Correia v. McDonald, 28 Vet. App. 158 (2016), the Court held that the final sentence of 38 C.F.R. § 4.59 (2016) requires that all VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint.

In October 2014, the Veteran was provided with a VA examination for back conditions, the report for which has been associated with the record. It is not clear whether joint testing for pain on both active and passive motion, and in weight-bearing and nonweight-bearing was conducted during October 2014 VA examination. As such, the Board is remanding the matter for further VA examination of the lumbosacral spine disability.

Disability Rating for Left Lower Extremity Radiculopathy from February 7, 2016

The record contains a February 2016 VA treatment record documenting a nursing telephone encounter with the Veteran reflecting the Veteran's complaints of severe left thigh pain for the last two days that was radiating from the left buttock to the left hip and thigh. The Veteran reported difficulty walking and that he did not have any means of transportation to seek treatment at a hospital. Subsequent treatment records are silent for any treatment or diagnosis of the left thigh pain, or whether such symptoms are related to the Veteran's service-connected left lower extremity radiculopathy. As such, the Board is remanding the matter for further VA examination to determine the severity of the left lower extremity radiculopathy from February 7, 2016, forward.

VA should obtain all relevant VA and private clinical documentation which could potentially be helpful in resolving the issues. Murphy v. Derwinski, 1 Vet. App. 78, 81-82 (1990); Bell v. Derwinski, 2 Vet. App. 611 (1992). On remand the RO should attempt to obtain any outstanding VA treatment records for the period from July 2016. 

Accordingly, the issues of an increased rating for the lumbosacral spine disability and a higher initial rating for the left lower extremity radiculopathy from February 7, 2016 forward, are REMANDED for the following actions:

1. Associate with the record all VA treatment records for the period starting from July 2016.

2. Schedule the appropriate VA examination in order to assist in determining the current level of severity of the service-connected lumbosacral spine disability and left lower extremity radiculopathy. The relevant documents in the record should be made available to the examiner, who should indicate on the examination report that he/she has reviewed the documents in conjunction with the examination. A detailed history of relevant symptoms should be obtained from the Veteran. All indicated studies should be performed. A rationale for all opinions and a discussion of the facts and medical principles involved should be provided. If the Veteran is unable to perform range of motion and/or sensory testing, the examiner should specifically state the cause of such inability. The VA examiner should provide the following:

Report the extent of the lumbosacral spine disability and left lower extremity radiculopathy symptoms in accordance with VA rating criteria.

Range of motion testing, in degrees, should be performed. In reporting the results of range of motion testing, the examiner should identify any objective evidence of pain and the specific excursion(s) of motion, if any, accompanied by pain.

The examiner should test the lumbosacral spine range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing, he or she should clearly explain why that is so.

The extent of any incoordination, weakened movement, and excess fatigability on use should also be described by the examiner. If feasible, the VA examiner should assess the additional functional impairment due to weakened movement, excess fatigability, or incoordination in terms of the degree of additional range of motion loss. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

The VA examiner should also express an opinion concerning whether there would be additional limits on functional ability on repeated use or during flare-ups, and, to the extent possible, provide an assessment of the functional impairment on repeated use or during flare-ups. The VA examiner should assess the additional functional impairment on repeated use or during flare-ups in terms of the degree of additional range of motion loss. If the VA examiner is unable to report the degree of additional range of motion loss during a flare-up, the VA examiner must explain why it is not feasible to render such an opinion. In other words, the VA examiner should opine as to any resultant loss in range of motion that would occur during flare-ups, or explain why it is not feasible to render such an opinion.

3. Thereafter, readjudicate the issues remaining on appeal. If the benefits sought on appeal are not granted, the Veteran and representative should be provided with a Supplemental Statement of the Case (SSOC).

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




_________________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals





Department of Veterans Affairs